**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LAWRENCE GASKIN, AS NEXT FRIEND OF S.G., A MINOR; *Plaintiff* | § § § § | |
| v. | § § § | Case No. SA-25-CA-00771-XR |
| NORTHSIDE INDEPENDENT SCHOOL DISTRICT, LAWRENCE CARRANCO, LAURA BISHOP, *Defendants* | § § § § § | |

## ORDER

On this date, the Court considered Defendants Northside Independent School District ("NISD") and Lawrence Carranco's Motion to Dismiss (ECF No. 13), Defendant Laura J. Bishop's Motion to Dismiss (ECF No. 19), and the briefing associated with both Motions (ECF Nos. 20–22).

## BACKGROUND[1]

In May 2023, S.G. was a twelve-year-old student at William P. Hobby Middle School, in NISD. ECF No. 11 ¶ 2.1. On May 16, 2023, she and one of her classmates chose to stay seated and silent while their peers stood and recited the Pledge of Allegiance. *Id.* The students' teacher, Laura Bishop, responded by saying to S.G. and the other refraining student, in front of the class, "Well why don't you go back to Africa then." *Id.* Although the complaint does not explicitly identify S.G.'s race, it supports a reasonable inference that she is Black.

Bishop's comment made S.G. feel emotionally distressed, publicly singled out, and subject to racial hostility. *Id.* S.G.'s peers mocked her and made fun of her over the incident. ECF No. 11

---

[1] The facts described herein are from the First Amended Complaint and are taken as true for purposes of adjudicating these Motions to Dismiss. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

¶ 2.2. All of this affected S.G. so much that she missed the final week of the school year. *Id.* She continues to feel distress and anxiety over the incident, and it has affected her sense of safety in educational environments. *Id.*

Lawrence Gaskin, who is S.G.'s father, brought this suit in state court, as S.G.'s next friend. ECF No. 1-4. He sued Defendants NISD; Lawrence Carranco, who was principal of Hobby Middle School at the time of the incident; and Bishop. *Id.* Defendants removed to this Court based on federal question jurisdiction. ECF No. 1.

Gaskin's claims are pursuant to 42 U.S.C. Section 1983. He alleges that each defendant is liable for (1) retaliating against S.G. for exercising her First Amendment right to refrain from participating in the Pledge of Allegiance and (2) violating the Equal Protection Clause. ECF No. 11.

Defendants NISD and Carranco filed a joint motion to dismiss (ECF No. 13), and Bishop filed her own motion to dismiss (ECF No. 19). Both motions are now ripe.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. S.A., L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery." (Quotation marks and citations omitted)).

In considering a 12(b)(6) motion, the complaint's factual allegations are taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not presumed true. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

As noted, a court generally cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" in this context, a court has "complete discretion" to either accept or exclude the evidence for purposes of

determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Serv., v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). But if "matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d).

Nevertheless, "pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly, the Court may "consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claim[]." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (internal quotation marks omitted); *see Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008) (determining reliance on documents attached to a response to a motion to dismiss appropriate where the documents were "sufficiently referenced in the complaint"). It is also "proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). As such, documents in these three categories may be considered without converting the motion to dismiss into a motion for summary judgment.

## II. Analysis

### a. Whether Bishop's Conduct Violated the Constitution

All three Defendants initially argue that Bishop's conduct did not violate the Constitution. Because those arguments would resolve this case if decided in Defendants' favor, the Court

4

addresses them first.  As noted above, Gaskin brings equal protection and First Amendment retaliation claims.

### 1. Equal Protection

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.  To state an equal protection claim, Gaskin must adequately allege "that [S.G.] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004) (quoting *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir.2001)).

"The question in the equal protection context, however, is not just whether the conduct is racially motivated but also whether th[e] action deprives a person of 'equal protection of the laws.'" *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir.), *decision clarified on reh'g,* 186 F.3d 633 (5th Cir. 1999).  "Where the conduct at issue consists solely of speech, there is no equal protection violation."  *Id.*  Bishop's comment, offensive though it was, "consist[ed] solely of speech."  *Id.*  So it did not independently violate the Equal Protection Clause.

Offensive speech, such as racial epithets, may amount to an equal proception violation where it "accompany[ies] harassment or a violation of established rights."  *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1013 (5th Cir. 2003); *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015) (finding a "racially offensive comment alone . . . insufficient to support an equal protection claim under § 1983" and noting that "the comment must also be coupled with 'harassment or some other conduct that deprives the victim of established rights' to constitute an equal protection violation").  The Amended Complaint alleges that S.G. was subject to ridicule and harassment by her peers.  ECF No. 20 at 4; *see* ECF No. 11 ¶ 2.2.  But those allegations are merely "'naked assertions' devoid of 'further factual enhancement,'" which the Court does not

presume true. *Iqbal*, 556 U.S. at 678. Also, Gaskin does not explain how the alleged harassment by S.G.'s *peers* is attributable to any of the Defendants for purposes of these equal protection claims. The equal protection claims thus fail.

### 2. First Amendment Retaliation

Gaskin also claims that Bishop's comment constituted illegal retaliation against S.G.'s exercise of a First Amendment right. To make out a First Amendment retaliation claim, a plaintiff must prove:

> (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct.

*Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 351 (5th Cir. 2017), *as revised* (July 3, 2017) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). Defendants do not contest the third prong—that Bishop's comment was motivated by S.G.'s refusal to participate in the Pledge of Allegiance. *See* ECF No. 13 at 5–8; ECF No. 19 at 6 ("Plaintiff's claim fails at elements one and two.").

### A. Protected Activity

"[T]he First Amendment protects speech as well as . . . 'inherently expressive'" conduct. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013). To determine whether conduct is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments," *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington,* 418 U.S. 405, 409 (1974)), "courts look to whether the conduct shows an 'intent to convey a particular message' and whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Voting for Am.*, 732 F.3d at 388 (quoting *Johnson*, 491 U.S.

6

at 404).   But "a narrow, succinctly articulable message is not a condition of constitutional protection."  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 569 (1995).

Defendants argue that Gaskin has failed to adequately allege that S.G.'s refusal to participate in the pledge was "expressive conduct."  ECF No. 7.  That much is true—the Amended Complaint includes only a conclusory assertion that the conduct was expressive.  *See* ECF No. 11 at 2 ("S.G. . . . chose to stay seated and silent for the Pledge of Allegiance, as a form of expressive political conduct.").  It gives no indication whatsoever of what message S.G. purportedly intended to convey by refusing to participate in the pledge.

But the First Amendment also protects "the right to refrain from speaking at all."  *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).  "Indeed, the right to speak and the right not to speak are complementary components of the broader concept of individual freedom of mind; any difference between them is without constitutional significance."  *Brinsdon*, 863 F.3d at 348 (cleaned up) (quoting *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 796–97 (1988)); *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023) ("Generally, . . . the government may not compel a person to speak its own preferred messages."); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 633 (1943) ("It would seem that involuntary affirmation could be commanded only on even more immediate and urgent grounds than silence.").  One's refusal to speak does not, itself, need to be expressive to implicate the First Amendment.  What matters in a refusal-to-speak case is whether what one *refuses* to do would be expressive.

The specific right to refrain from participating in the Pledge of Allegiance has been clearly established for over eighty years, since the Supreme Court decided *West Virginia State Board of Education v. Barnette*, 319 U.S. 624.  In *Barnette*, the West Virginia Board of Education adopted a resolution requiring students to salute the flag and participate in the Pledge of Allegiance.  *Id.* at

625–28.  Failure to participate could result in expulsion, in which case the student was considered "unlawfully absent."  *Id.* at 629.  The student could be "proceeded against as a delinquent," and their parents or guardians could be prosecuted.  *Id.*

The plaintiffs in *Barnette* were Jehovah's Witnesses who refused to salute the flag for religious reasons.  *Id.* at 629.  Jehovah's Witness children had been expelled from school for refusing to participate in the pledge or salute the flag, and parents had been prosecuted or threatened with prosecution.  *Id.* at 630.  The Court struck down the regulation, holding that "the action of the local authorities in compelling the flag salute and pledge transcends constitutional limitations on their power and invades the sphere of intellect and spirit which it is the purpose of the First Amendment to our Constitution to reserve from all official control."  *Id.* 642.  Stated more simply, the First Amendment protects one's right to refuse to participate in the Pledge of Allegiance.

Defendants say this case is a "far cry" from *Barnette*.  ECF No. 19 at 7–8.  They argue that the students in *Barnette*'s refusal to participate in the pledge was, itself, expressive.  Indeed, Defendants claim "[t]he expressive meaning in that case was unmistakable" because the children refused to salute the flag based on their religious convictions.  ECF No. 19 at 7–8.

But *Barnette* says nothing about whether the students' refusal to participate in the pledge was expressive.  And there is no reason to think it was.  Acting on one's personal religious beliefs does not inherently communicate anything; nor does it inherently suggest an *intent* to communicate anything.  *Barnette* was explicitly *not* about one's right to "speak his own mind" but rather about

8

one's right against the state "compel[ling] him to utter what is not in his mind." *Barnette*, 319 U.S. at 634.

In *Wooley v. Maynard*, the Supreme Court considered whether the state of New Hampshire could prohibit the plaintiff from covering up the state motto—"Live Free or Die"—on his license plate. *Wooley*, 430 U.S. at 713. The Court explicitly declined to consider whether covering the motto was "symbolic speech," because the "more appropriate" First Amendment question was "whether the State may constitutionally require an individual to participate in the dissemination of an ideological message by displaying it on his private property in a manner and for the express purpose that it be observed and read by the public," *id.*—that is, whether the state could require the plaintiff to disseminate the state's preferred message. The Court held that the state could not do so, because it would infringe on the plaintiff's right *not* to speak. *Id.* at 713–15.

Finally, *303 Creative LLC v. Elenis*, 600 U.S. 570, further demonstrates that a refusal to speak need not, itself, be expressive to be protected by the First Amendment. There, the plaintiff sought to create websites for customers, including wedding websites. *Id.* at 579. She challenged a Colorado law prohibiting most public-facing businesses from denying "the full and equal enjoyment" of their "goods and services to any customer based on," among other things, sexual orientation. *Id.* at 580–81. The plaintiff feared that the law would require her to "create websites celebrating marriages she does not endorse"—specifically, same-sex marriages. *Id.* at 581.

The Court held that Colorado sought "to force an individual to 'utter what is not in [her] mind' about a question of political and religious significance," which "the First Amendment does not tolerate." *Id.* at 596 (alteration in original) (quoting *Barnette*, 319 U. S. at 634). The Court in *303 Creative* did not consider whether the plaintiff's *refusal* to create same-sex wedding websites was expressive. *See generally* 600 U.S. 570. Instead, it emphasized that what the plaintiff *refused*

*to do* would have been expressive.  *See id.* at 597 (emphasizing Colorado's stipulation that the plaintiff's "activities are 'expressive'"), 582–83 (listing the stipulations, which discuss the expressiveness of the websites the plaintiff would create, not the expressiveness of her *refusal* to create certain websites).

There is no question that what S.G. refused to do would have been expressive.  Saying the Pledge of Allegiance is clearly expressive where, as here, the government actor seeks "an operative pledge" meant to express actual belief in the things said.  *Brinsdon*, 863 F.3d at 349; *see generally Barnette*, 319 U.S. 624.  S.G. thus engaged in protected activity.[2]

                                B. Injury That Would Chill a Person of Ordinary Firmness from Continuing to Engage in Protected Activity

Defendants next claim that Gaskin has failed to adequately plead that Bishop's "actions caused [S.G.] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in" protected activity.  *Brinsdon*, 863 F.3d at 351 (quoting *Keenan*, 290 F.3d at 258).  The Court disagrees.

Defendants point to Fifth Circuit caselaw "holding that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable."  *Colson v. Grohman*, 174 F.3d 498, 513 (5th Cir. 1999).  They argue that "[a]ctions that merely cause 'inconvenience and frustration' are not" enough.  ECF No. 13 at 7–8 (citing *Caldwell v. Medina*, No. 1:19-CV-524-RP, 2023 WL 11918058, at *4 (W.D. Tex. Mar. 30, 2023)).

---

[2] Defendants point to Section 25.082 of the Texas Education Code, which requires students to participate in the pledge unless a parent requests in writing that their child be excused from doing so.  The Eleventh Circuit has upheld a similar requirement against a facial free speech challenge. *Frazier ex rel. Frazier v. Winn*, 535 F.3d 1279, 1285 (11th Cir. 2008).  But that court did so based on "a parent's right to interfere with the wishes of his child." *Id.*  In this case, there is no reason to think that S.G.'s choice not to say the pledge conflicts with her parent's wishes—indeed, Gaskin's bringing this case on S.G.'s behalf suggests otherwise.

But whether a plaintiff has suffered an injury that would chill a person of ordinary firmness depends on the circumstances. *See Hou. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478, 480 (2022) (Although censure of an elected official by the body of which he was a part was not enough to support a First Amendment retaliation claim, "government officials who reprimand or censure students, employees, or licensees may in some circumstances materially impair First Amendment freedoms."). A public official, for example, "must expect to endure" certain conduct that a private citizen, and especially a young child, is not expected to endure. *See Keenan v. Tejeda*, 290 F.3d 252, 258–59 (5th Cir. 2002) (In *Colson*, 174 F.3d 498, "the defendants' alleged actions constituted, at most, a 'steady stream of false accusations and vehement criticism that *any politician* must expect to endure;' consequently, *an ordinary politician* would not be deterred . . . ." (Emphasis added)).

S.G. was a twelve-year-old child allegedly made subject to a harsh, racist remark by her teacher, in a classroom and in front of her peers. That is not a mere "inconvenience," and the pleadings support an inference that it did not merely cause "frustration." The Court is satisfied that, especially given S.G.'s status as a student, her age, the presence of her peers, and the fact that the speaker was her teacher, the pleadings sufficiently allege an injury that is actionable and that "would chill a person of ordinary firmness" in S.G.'s position from continuing their protected activity.

Defendants next argue that Gaskin's First Amendment retaliation claim fails because he has not adequately pleaded that S.G.'s exercise of her free speech rights was, *in fact*, curtailed. In the Fifth Circuit, "a retaliation claim requires some showing that the plaintiffs' exercise of free speech has been curtailed." *Keenan*, 290 F.3d at 259. But "since there is no justification for harassing people for exercising their constitutional rights," "the effect on freedom of speech"

11

"need not be great in order to be actionable." *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Gaskin has pleaded that, because of the incident underlying this suit, S.G. missed a week of school and that Bishop's comment "affected [S.G.'s] sense of safety in educational environments." ECF No. 2–3. At this stage—where the complaint must simply "provide enough factual allegations to draw the reasonable inference that the elements exist," *Innova Hosp.*, 995 F. Supp. 2d at 602—that is enough. Most directly, by avoiding school, S.G. refrained from exercising her free speech rights, presumably including her right to refrain from participating in the Pledge of Allegiance while at school. And one could infer from other allegations, including that S.G.'s "sense of safety in educational environments" was "affected," that S.G. did not exercise her rights as freely when she returned to class.

Gaskin has sufficiently pleaded that Bishop retaliated against S.G. in violation of the First Amendment. As such, it is necessary to separately consider: (1) whether Bishop's qualified immunity shields her from liability and (2) whether Carranco and NISD can be held liable in connection to Bishop's remark.

b.    Bishop's Qualified Immunity

Bishop argues that qualified immunity precludes her liability. "Government officials who are sued for money damages under [Section] 1983 are entitled to qualified immunity from liability unless" (1) "their actions violated a federal statutory or constitutional right and" (2) "that right was clearly established at the time of their conduct." *Oliver v. Arnold*, 3 F.4th 152, 159 (5th Cir. 2021). "Another articulation particularly for the school setting is that educators are entitled to qualified immunity unless no 'reasonable official' would have deemed the disputed conduct constitutional." *Id.* (quoting *Brinsdon*, 863 F.3d at 347). Courts "may begin by analyzing either step of the

12

qualified-immunity inquiry." *Brinsdon*, 863 F.3d at 347 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). For the reasons already stated, Gaskin has sufficiently pleaded that Bishop's actions violated a constitutional right.

To determine "what constitutes clearly established law," courts look first to Supreme Court Precedent and then to binding circuit precedent. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). "When there is no direct controlling authority, '[a court] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority.'" *Id.* (quoting *Shumpert*, 905 F.3d at 320). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Id.* (quoting *Shumpert*, 905 F.3d at 321).

"'[T]he *Barnette* right to abstain from the pledge' is well established enough that [the Fifth Circuit] has previously described a case in which it was violated as a 'rare exception' to the trend 'that educators are rarely denied immunity from liability arising out of First–Amendment disputes.'" *Oliver*, 3 F.4th at 160 (quoting *Morgan v. Swanson*, 755 F.3d 757, 760 (5th Cir. 2014)). "It is also well established that a government official violates the First Amendment by retaliating against a person for exercising First Amendment rights." *Id.* (cleaned up). And again, no party disputes that Bishop's comment was in response to S.G.'s refusal to participate in the pledge.

The question, then, is whether it was clearly established that Bishop's comment was the kind of thing that could support a First Amendment retaliation claim—that is, whether it was clearly an "adverse action" that caused S.G. an injury that would chill a person of ordinary firmness from continuing to engage in the relevant protected activity. *See id.* at 159–60. As noted above,

13

the Fifth Circuit has held that "retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable." *Colson*, 174 F.3d at 513. Bishop's comment was no mere "criticism."

Bishop is thus not entitled to qualified immunity, and the First Amendment claim against her survives.

### c.  Claims Against Carranco

 "Supervisory officials cannot be held liable under [S]ection 1983 for the actions of subordinates . . . on any theory of vicarious or *respondeat superior* liability." *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Rather, a supervisor may be held liable "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.,* 537 F.3d 404, 435 (5th Cir. 2008)).  A supervisor can sometimes be liable for failure to adopt a policy or for failure to supervise, train, or discipline subordinates.  *Id.*; *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (noting that the Fifth Circuit has extended failure-to-train liability to cover failure-to-discipline claims).  Gaskin's claims against Carranco are for an alleged failure to supervise, train, and/or discipline.  *See* ECF No. 11 at 3–4; ECF No. 20 at 4–5.

Gaskin first claims that Carranco "effectively ratif[ied]" Bishop's conduct.  ECF No. 11 at 3.  Section 1983 liability based on a ratification theory can be proper if a supervisor "approve[s] a subordinate's decision and the basis for it."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  Gaskin alleges that Carranco "had knowledge of the incident and failed to take meaningful action to investigate or remedy the violation."  ECF No. 20 at 4.  But merely failing to discipline

14

or investigate is not generally enough to support ratification-based liability under Section 1983. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 n.2 (5th Cir. 2009) (Evidence that the relevant subordinates were not disciplined, combined with evidence that the supervisor testified that the subordinates complied with relevant policies and procedures, was not enough to find ratification.); *Benfer v. City of Baytown, Tex.*, 120 F.4th 1272, 1287 (5th Cir. 2024) ("[R]atification requires the approval of a [supervisor], not their mere acquiescence."). Gaskin's ratification theory thus fails.

Absent ratification, a supervisor can be liable for failure to train, supervise, or discipline if there is a "causal link" between the failure and the violation of the plaintiff's rights, and the failure amounts to "deliberate indifference." *Porter*, 659 F.3d at 446; *Deville*, 567 F.3d at 171; *Ometu v. City of San Antonio*, No. 24-50152, 2025 WL 1938349, at *3 (5th Cir. July 15, 2025). "[F]or liability to attach," "a plaintiff must allege with specificity" the purported deficiencies in the training program, supervision, or pattern of discipline. *See Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

Gaskin has provided no meaningful factual allegations regarding how any supervision, training, or discipline was inadequate or how it caused the incident. *See* ECF No. 11. Instead, he conclusorily asserts that Carranco's "failure to supervise or discipline" Bishop "constituted deliberate indifference" and that Carranco "failed to take reasonable steps to prevent or remedy" Bishop's conduct. ECF No. 11 at 3–4.[3] Such allegations are not enough. *See Roberts*, 397 F.3d

---

[3] Gaskin's allegations regarding NISD's purported failure to train or supervise are similarly conclusory. *See* ECF No. 11 at 3 (saying the complained-of actions "were undertaken by [NISD's] employees in accordance with official policies, customs, or practices, or due to a failure to adequately train or supervise staff on constitutional rights and racial sensitivity"); ECF No. 11 at 4 ("[NISD], through its policies, practices, or failure to train and supervise its personnel, allowed an environment of racial hostility to persist, leading to S.G.'s harm.").

at 293; *Iqbal*, 556 U.S. at 681 ("[T]he conclusory nature of respondent's allegations . . . disentitles them to the presumption of truth."). Gaskin's claims against Carranco must therefore be dismissed.

    d.   Claims Against NISD[4]

Finally, Gaskin has not adequately pleaded a claim against NISD. Gaskin brings claims against NISD for both (1) failure to train or supervise and (2) an unconstitutional policy or custom. The failure to train or supervise claims fail for the same reasons they fail as to Carranco. *See* note 3 *supra*.

That leaves the policy or custom claims against NISD. "[M]unicipal liability under [S]ection 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (*Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978)).

In Texas, "final policymaking authority in an independent school district . . . rests with the district's board of trustees." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020) (alteration in original) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)). Gaskin does not allege that NISD's board took any action or enacted any policy. Nor does he allege any delegation of policymaking authority by the board. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) ("A municipality can be held liable . . . when it delegates policymaking authority, not when it delegates *decisionmaking* authority."). Indeed, the complaint does not even *mention* the board. It

---

[4] "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). So to the extent Gaskin brings official-capacity claims against Bishop or Carranco, those claims suffer the same fate as his claims against NISD.

also does not allege a policy with any specificity.  Instead, it simply claims that Bishop's conduct was "in accordance with official policies, customs, or practices."  In short, Gaskin has alleged neither a policymaker, a policy, nor that any policy was the "moving force" behind the violation of S.G.'s constitutional rights.  His claims against NISD must fail.

### CONCLUSION

For the foregoing reasons, Defendants NISD and Carranco's Motion to Dismiss (ECF No. 13) is **GRANTED.**  Defendant Bishop's Motion to Dismiss (ECF No. 19) is **GRANTED IN PART AND DENIED PART**.  Plaintiff's claim against Bishop for retaliation under the First Amendment survives.

It is so **ORDERED**.

**SIGNED** this 23rd day of February, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE